# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DE'LEAH JENKINS et al.,

    Plaintiffs,

v.

CARCO GROUP, INC.,

    Defendant.

Case No. 2:18-CV-02196-HLT-GEB

## MEMORANDUM AND ORDER

This is a putative class action under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681x (2012) ("FCRA"). Plaintiff De'Leah Jenkins alleges Defendant CARCO Group, Inc. routinely violates § 1681c(a)(5) of FCRA by reporting consumers' college attendance dates and degree-conferral status that predate the report by more than seven years, including her own. Plaintiff asserts an individual FCRA claim and seeks certification of a putative class action under FCRA. She also asserts an individual negligence per se claim. Defendant seeks dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing reporting of consumer educational history does not violate § 1681c(a)(5). Because accurately reported college enrollment dates and degree-conferral status are not "adverse information" subject to § 1681c(a)(5)'s temporal reporting restrictions, the Court grants Defendant's motion.

## I.    BACKGROUND

Defendant is a consumer reporting agency ("CRA"). Doc. 1 at 1. In March 2018, Defendant issued a background report on Plaintiff to Synchrony Financial ("Synchrony"). *Id.*; Doc. 23. The report indicates Plaintiff self-reported that she attended Kansas City Kansas Community College

("KCKCC") from August 2007 to December 2010 and earned a mortuary science degree.[1] Doc. 23 at 4. The report further states KCKCC advised Defendant that Plaintiff was enrolled only from August 2007 to May 2007 and no degree was conferred. *Id.* On the report, Defendant labeled the discrepancy between Plaintiff's self-reported college attendance dates and degree-conferral status and the information provided by KCKCC as "adverse." *Id.* Plaintiff alleges that Synchrony took "adverse action against [her]" based in part on Defendant's reporting of Plaintiff's college attendance dates and degree-conferral status. Doc. 1 at 3. Plaintiff's FCRA claim and the putative class action are based on Defendant's alleged violation of § 1681c. *Id.* at 3-7. Defendant's alleged violation of § 1681c also is the basis of Plaintiff's negligence per se claim. *Id.* at 7-9.

## II.     STANDARD

Under Rule 12(b)(6), to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff's claim is facially plausible if she pleads sufficient factual content to allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully" but "is not akin to a 'probability requirement.'" *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

---

[1] Generally, a court is limited to the well-pleaded factual allegations in a complaint when ruling on a motion to dismiss for failure to state a claim. But there are exceptions. A court may consider an indisputably authentic copy of a document that is referred to in the complaint and central to the plaintiff's claim. *See GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Defendant filed an unredacted copy of the report under seal. Doc. 23. Plaintiff does not dispute the authenticity of the unredacted copy. Because the Court finds the unredacted report is referred to in Plaintiff's Complaint, is central to her claims, and is indisputably authentic, it considers the unredacted report in resolving Defendant's motion.

This standard results in two principles that underlie a court's analysis. *Id.* First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Stated differently, though the court must accept well-pleaded factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted). "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. RULE CIV. PROC. 8(a)(2) (original brackets omitted). "In keeping with these [two] principles, a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

## III.  ANALYSIS

The Court agrees with Defendant that Plaintiff has failed to state a claim. Plaintiff's individual FCRA claim, the putative class action, and Plaintiff's negligence per se claim hinge on the Court's determination of whether a consumer's accurately reported college attendance dates and degree-conferral status are "adverse information" under section § 1681c(a)(5) and, thus, are subject to temporal reporting restrictions. Although the Court accepts the veracity of Plaintiff's well-pleaded factual allegations—as it must in considering a motion to dismiss—those allegations do not plausibly give rise to an entitlement to relief. The Court holds, as a matter of law, that college attendance dates and degree-conferral status are not "adverse information" under the plain

language of § 1681c(a)(5). As discussed in detail below, this conclusion is fatal to Plaintiff's individual claims and the putative class claim.

### A. Plaintiff's FCRA Claim Under § 1681c(a)(5)

"Congress enacted FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007). Congress recognized the "vital role" of CRAs and the need to ensure that CRAs "exercise their grave responsibilities with fairness, impartiality, and respect for the consumer's right to privacy." 15 U.S.C. § 1681 (2012). To aid enforcement, § 1681n permits private suits by consumers against CRAs that willfully or knowingly fail to comply with certain duties under the FCRA.[2] *Id.* § 1681n. Plaintiff contends Defendant willfully and/or knowingly violated § 1681c(a)(5). The Court disagrees.

#### 1. Interpretation of § 1681c(a)(5)

FCRA prohibits CRAs from producing consumer reports containing six categories of information. *See id.* § 1681c. Five of those categories are limited in their scope: (1) information related to bankruptcy proceedings predating the report by more than ten years; (2) civil suits, judgements, and records of arrest predating the report by more than seven years or where the statute of limitations has run; (3) paid tax liens predating the report by seven years; (4) accounts "placed for collection" or "charged to profit and loss" predating the report by more than seven years; and (5) contact information of any "medical information furnisher" that has notified the CRA of its status.[3] *Id.* § 1681c(a)(1)-(4), (6). The remaining category, found in § 1681c(a)(5), is broader in

---

[2] Section 1681n allows for recovery of actual or statutory damages, court costs, reasonable attorney's fees, and punitive damages.

[3] Subsection (b) of § 1681c sets forth certain exceptions to the reporting prohibitions enumerated in § 1681c(b)(1)-(6), none of which are relevant to this case.

scope and prohibits the reporting of "[a]ny other adverse item of information, other than records of convictions of crimes which [predate] the report by more than seven years." *Id.* § 1681c(a)(5).

Plaintiff contends Defendant violated § 1681c(a)(5) by providing to Synchrony in March 2018 a report reflecting her college attendance dates and degree-conferral status almost eight years earlier, from August 2007 to May 2010. Plaintiff relies heavily on Defendant categorizing as "adverse" the discrepancy between Plaintiff's self-reporting that she earned a degree and KCKCC reporting Plaintiff did not earn a degree. Because Defendant labeled the discrepancy "adverse," Plaintiff concludes a violation of § 1681c(a)(5) must have occurred. Defendant's use of the label "adverse" does not automatically equate to a statutory violation. The Court, therefore, examines the statutory language and other relevant authority to determine whether the information Defendant reported is "adverse" within the meaning of § 1681c(a)(5).

To interpret § 1681c(a)(5), the Court first considers the statutory language "to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997). Courts determine plainness or ambiguity "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* at 341. "[I]f the statutory language is unambiguous and 'the statutory scheme is coherent and consistent'" no further inquiry is required. *Id.* at 340. Here, consideration of these factors leads the Court to conclude "adverse information" as used in § 1681c(a)(5) is unambiguous and does not include college attendance dates and degree-conferral status.

The language of § 1681c(a)(5) itself reveals it does not prohibit accurate reporting of college attendance dates and degree-conferral status. The relevant portion of § 1681c(a)(5) prohibits reporting "[a]ny other adverse item of information" predating the report by seven years.

The defining characteristic for the prohibited information is that it be "adverse." *See id.* "Adverse" is not statutorily defined, but generally accepted dictionary definitions include "opposed to one's interests," "unfavorable," and "harmful."[4] *Adverse*, MERRIAM-WEBSTER DICTIONARY ONLINE, https://www.merriam-webster.com/dictionary/adverse (last visited September 6, 2018).[5]

In § 1681c(a)(5), "adverse" is used as an adjective modifying "item of information." The information Plaintiff accuses Defendant of reporting in violation of § 1681c(a)(5) is her college attendance dates and degree-conferral status. Plaintiff does not dispute the accuracy of this information. The information, by its nature, is neutral and neither positive nor negative. When accurately reported, college attendance dates and degree-conferral status are not unfavorable, harmful, or contrary to the interests of a consumer relying on a CRA to produce an accurate credit report and protect her privacy. Plaintiff relies heavily on Defendant's use of the precise term "adverse" in reporting the discrepancy between Plaintiff's self-reported information and the information provided by KCKCC. This approach misplaces the key focus of the inquiry. The question is not whether the information Defendant reported was contrary to what Plaintiff self-reported, but whether the underlying information is inherently contrary or harmful to Plaintiff. Likewise, Defendant's own characterization of the discrepancy did not transform the nature of the underlying information—Plaintiff's college attendance dates and degree-conferral status—from non-adverse to adverse for purposes of § 1681c(a)(5).

---

[4] A word's ordinary meaning may be found by reference to generally accepted dictionary definitions. *In re Hamilton Creek Metro. Dist.*, 143 F.3d 1381, 1385 (10th Cir. 1998).

[5] Neither party argues the meaning of "adverse" was different when Congress drafted FCRA than it is today. The Court's own research uncovered a 1966 definition of "adverse" that is substantially similar to today's definition: "unfriendly in purpose; hostile; acting against one's interest; unfavorable; harmful; coming from or acting in a contrary direction; opposing." *Adverse*, THE WORLD BOOK ENCYCLOPEDIA DICTIONARY (1966) (internal numbering omitted; botany definition omitted).

The specific context of "adverse information" within § 1681c also supports the conclusion that its meaning under § 1681c(a)(5) is plain and unambiguous and does not include college attendance dates and degree-conferral status. *See Robinson*, 519 U.S. at 340 (explaining that plain language analysis requires consideration of "specific context in which that language is used"). As noted above, in addition to "[a]ny other adverse item of information," § 1681c identifies five categories of information subject to temporal reporting limitations in separately enumerated subsections: (1) bankruptcy proceedings; (2) civil suits, judgements, and arrests; (3) paid tax liens; (4) accounts sent for collection or charged to profits and loss; and (5) contact information of medical providers. 15 U.S.C. § 1681c(1)-(4), (6). The final category, contact information of medical providers, addresses consumer privacy concerns. The first four categories, however, expressly prohibit CRAs from reporting information (within certain temporal limitations) that is, by its nature, harmful or unfavorable to a consumer's interests. Bankruptcy filings, tax liens, civil judgements, and unpaid collection accounts included on a consumer's credit report are inherently "adverse." These items are fundamentally different from accurately reported college attendance dates and degree-conferral status, which reflect neither positively nor negatively on a consumer.

The statute's overall context supports the same conclusion. FCRA's purpose is to ensure fair and accurate reporting. *Safeco Ins.*, 551 U.S. at 52. CRAs play a "vital role in assembling and evaluating . . . information on consumers." 15 U.S.C. § 1681(a)(3) (2012). FCRA requires CRAs to "adopt reasonable procedures for meeting the needs of commerce for consumer . . . information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." *Id.* § 1681. If an interpretation of § 1681c(a)(5) consistent with this stated legislative purpose is available, the Court must avoid

any alternative interpretation that would yield an absurd result. *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 575 (1982).

Verification of college attendance dates and degree-conferral status by CRAs serves a valuable function. Many employers rely on CRAs for this service as part of their employee interview screening and background check process. If CRAs accurately report the information, this valuable service can be provided while maintaining the consumer's interests in fair and accurate reporting. Prohibiting the reporting of college attendance dates and degree-conferral status when the information predates the report by more than seven years—as Plaintiff suggests—would permit employers to verify this information only for those applicants who attended college or received a degree within the last seven years. It would also allow, and perhaps encourage, applicants whose information predated the report by seven years to falsify their information with impunity. Given the FCRA's recognition of the need to balance CRAs vital role in evaluating consumer information with consumers' expectation in accurate reporting, the Court concludes that Plaintiff's proposed interpretation—one that would both prevent CRAs from providing a valuable service and protect applicants who falsify information—yields an "absurd result."

### 2. Federal Trade Commission Guidance

The Court's interpretation of § 1681c(a)(5) is also consistent with the only apparent legal authority on the issue—three informal staff opinion letters from the Federal Trade Commission ("FTC") and an FTC summary report. The first FTC staff opinion letter, dated April 17, 1998, addresses whether § 1681c's temporal limits on reporting adverse information apply to verification of graduation and past employment information. FTC, Staff Opinion Letter to Lee Seham, 1998 WL 34323743, at *1 (Apr. 17, 1998). Referring to the dictionary definition of "adverse," the FTC reasoned that only information that "cast[s] the consumer in a negative or unfavorable light" is within § 1681c's scope. *Id.* Because college attendance and dates of employment "do[ ] not reflect

adversely upon the consumer," the FTC concluded that information "is not 'adverse' information as the term is used for [§ 1681c(a)(5)] purposes." *Id.* The FTC restated its conclusion in a second staff opinion letter a few months later in June 2018, stating that "[t]he date that a consumer graduated from college is not an 'adverse item of information' covered by [§ 1681c(a)(5)]." FTC, Staff Opinion Letter to Michael Rosen, 1998 WL 34323763, at*3 (June 9, 1998).

Most persuasive is a December 1998 FTC staff opinion letter. FTC, Staff Opinion Letter to Barry Nadell, 1998 WL 34323718, at *1-2 (June 9, 1998). In this third letter, the FTC addresses whether its previous conclusion in its April 17, 1998 staff opinion letter would change if a consumer falsified her educational or employment background, rendering the information reported by the CRA "in fact, 'adverse' to the interest of the consumer in the sense that it contradicts information provided by the applicant." *Id.* The FTC did not waiver in its position:

> We would not change our analysis. We believe that whether information is "adverse" for FCRA purposes depends upon the nature of the information and not the use of the information. For example, tax liens, payment delinquencies, evictions, and similar information are clearly items of negative information that reflect adversely upon the consumer. However, dates of employment and educational data (such as dates of graduation and degrees) are neither "positive" nor "negative." The information is neutral.
>
> We believe that facially neutral information should not be considered "adverse" information because a consumer may have misrepresented the information. To take the contrary position would prohibit a CRA from performing a valuable function for its clients— verifying employment or education data beyond seven years— without furthering any of the goals of [§ 1681c] of the FCRA. Accordingly, we believe that a CRA may verify education information and employment dates even where the information it provides to its customers may contradict what a consumer has listed on his or her application.

*Id.* The FTC's position has not varied in recent years. It cites both the April 1998 and December 1998 staff opinion letters in its 2011 report, *40 Years of Experience with the Fair Credit Reporting*

*Act: an FTC Staff Report with Summary of Interpretations*, FTC, 2013 WL 10954239, at *51 (July 2011).

The FTC staff opinion letters are not formal rulemakings and not entitled to the level of deference given under *Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842-44 (1984), for purposes of statutory construction. *Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (comparing opinion letters and formal adjudication or notice-and-comment rulemaking). They are not binding authority, but are "entitled to respect" to the extent they have the "power to persuade." *Id.* (internal citations omitted); *Owner-Operator Indep. Drivers Ass'n v. USIS Commercial Servs., Inc.*, 537 F.3d 1184, 1192 (10th Cir. 2008) (considering FTC staff letter as persuasive authority).

The Court finds the FTC staff opinion letters persuasive for several reasons. They explicitly address the precise question before the Court, set out sound reasoning for their conclusions, and are consistent. The FTC also administers the FCRA, and possesses some degree of expertise in these matters. Most importantly, the FTC's interpretation of "adverse information" is consistent with the plain language of § 1681c(a)(5) and this Court's interpretation. Though they have limited precedential value, the FTC staff opinion letters support the Court's conclusion that college attendance dates and degree-conferral status are not "adverse information."[6] For all of these reasons, the Court holds that the term "adverse information" as used within § 1681c(a)(5) is plain and unambiguous with regard to the particular dispute in this case and that accurately reported college attendance dates and degree-conferral status do not constitute "adverse information."

---

[6] Plaintiff acknowledges the FTC staff opinion letters but contends Congress's failure to specifically adopt the FTC's interpretation when it amended § 1681c in November 1998 indicates a rejection. Doc. 10 at 6-8. Absent specific authority to the contrary, the Court does not view Congress's silence as a congressional rejection of the FTC's interpretation.

### 3. Absence of a Claim Under § 1681c(a)(5)

Plaintiff's FCRA claim is premised on Defendant's alleged willful or knowing violation of only one provision of FCRA—§ 1681c(a)(5). Having concluded that accurately reported college attendance dates and degree-conferral status do not constitute "adverse information" under § 1681c(a)(5) as a matter of law, Plaintiff's FCRA claim must be dismissed. Plaintiff does not dispute that Defendant accurately reported her college attendance dates and degree-conferral status, thus no violation of § 1681c(a)(5) occurred, either willfully or knowingly, and Plaintiff cannot state a claim upon which relief can be granted under § 1681c(a)(5).

### B. Negligence Per Se and Putative Class Action

Secondary to her FCRA claim, Plaintiff alleges common law negligence per se.[7] Section 1681h(e) of FCRA preempts such claims unless "false information [was] furnished with malice or willful intent to injure [a] consumer." Plaintiff concedes the information Defendant reported was accurate. Absent a claim Defendant reported "false information," Plaintiff cannot avoid preemption. Regardless, Plaintiff cannot state a claim for negligence per se. Under Kansas law, the elements of a negligence per se claim include "violation of a statute." *JP Morgan T. Co. Nat. Ass'n v. Mid-Am. Pipeline Co.*, 413 F. Supp. 2d 1244, 1266-67 (D. Kan. 2006) (quoting *Pullen v. West*, 92 P.3d 584, 593 (Kan. 2004)). As discussed above, Defendant did not violate FCRA by accurately reporting Plaintiff's college attendance dates and degree-conferral status.

Plaintiff also sought designation as class representative for a putative class action related to Defendant's alleged violation of § 1681c(a)(5) of FCRA. Because the Court dismisses Plaintiff's individual FCRA claim, her claims on behalf of the putative class must also be dismissed.

---

[7] Defendant's motion also addressed a potential claim by Plaintiff for breach of implied contract. Doc. 6 at 11. Plaintiff concedes she is not pursuing an implied contract claim. Doc. 10 at 1 n.1.

## IV. CONCLUSION

THE COURT THEREFORE ORDERS that Defendant's Motion to Dismiss for Failure to State a Claim (Doc. 5) is GRANTED.

DATED:  September 10, 2018                  /s/ *Holly L. Teeter*
  HOLLY L. TEETER
  UNITED STATES DISTRICT JUDGE